Robert C. Bundy, ABA #7206021
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com

Co-Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF ALASKA

| | |
|---|---|
| WILLIAM G. OSBORNE,<br><br>                    Plaintiff,<br><br>vs.<br><br>DISTRICT ATTORNEY'S OFFICE FOR THE THIRD JUDICIAL DISTRICT, ANCHORAGE, ALASKA; SUSAN A. PARKES, DISTRICT ATTORNEY, in her official capacity; ANCHORAGE POLICE DEPT., ANCHORAGE, ALASKA; WALT MONEGAN, ANCHORAGE POLICE DEPT.<br><br>                    Defendants. | Case No. A03-0118 CV<br><br><br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

       Plaintiff William Osborne submits this Reply to Defendants' Opposition to Motion for Summary Judgment filed on February 17, 2006. Defendants offer four basic arguments in response to plaintiff's motion: (1) that plaintiff has failed to meet his initial burden of production because his motion and supporting memorandum "do not include any references to the record he has asserted." (Memorandum in Opposition to Summary

Judgment ("Def. Memo") at 2, *citing Kathriner v. Unisea*, Inc. 975 F.2d 657, 659 (9th Cir. 1992)); (2) that genuine issues of material fact exist concerning the relevance of the biological evidence and ability of DNA testing to exonerate Osborne (Def. Memo at 12-13); (3) that the existence of a federal constitutional right to DNA testing is "dubious" (*Id*. at 2-3, 14-23); and (4) that even assuming a limited due process right to access, Osborne has not successfully navigated the "difficult course" to establish this right.  (*Id*. at 3, 18-26, *citing*, *inter alia*, *Moore v. Lockyer*, 2005 WL 2334350 (N.D. Cal. 2005). For the reasons given below, none of these arguments have merit.

**1.     Osborne Has Met His Rule 56 Burden of Production**

Defendants assert that Osborne's moving papers "do not include any references to the record for the facts he has asserted." (Def. Memo at 2, 11).  This is simply not true. In his Memorandum of Law, Osborne repeatedly cites to his Trial Transcript, relevant portions of which were attached to his Complaint as Exhibit A.  (*See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("SJ Memo") at 5-7; *see also* Complaint, Exhibit A).  Defendants do not dispute the accuracy of Osborne's transcript citations, nor do they give a reason why Osborne's citations should not count as "references to the record." In short, Osborne has clearly met his burden under Rule 56. *See* Fed. R. Civ. P 56(a) (claimant may move for summary judgment "with or without supporting affidavits."); Fed. R. Civ. P. 56(c) (including "pleadings… and admissions on file" in description of record to be considered).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR                                     *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 2 of 15                                                                                                                     A03-0118 CV

## 2. No Genuine Issue of Material Fact Exists

Defendants' attempt to create material and disputed "factual matters" forces them to brazenly contradict their own position from trial. At trial, the State offered DQ Alpha DNA testing of sperm from the condom, and microscopic hair analysis of the hairs from the condom and from K.G.'s sweater to link Osborne to the crime scene and to infer his guilt. (*See* SJ Memo at 5-6, *citing* relevant transcript pages). Now, when Osborne seeks to put this critical trial evidence to the test of modern science, defendants actually suggest that it has "not been established" that the condom or hair from K.G.'s sweater came from her assailants. (*See* Def. Memo at 12-13). The hypocrisy of this strategy is evident, but it nonetheless fails to create a material issue preventing summary judgment.

The most glaring flaw in defendants' flip-flop argument is that it is predicated upon the false assumption that the relevant standard under which Osborne's claim should be evaluated is "factual innocence" rather than the correct "material exculpatory evidence" standard. Defendants suggest that it is possible that Osborne could be guilty even if DNA tests excluded him from both the hair and semen evidence, and insist that the

> fact that the trial prosecutor mentioned these items of evidence in closing argument is not relevant to whether favorable DNA test results would prove Osborne's factual innocence. Factual innocence does not mean that there is a reasonable probability or even possibility that a fact-finder would have reached a different result; it means that the new evidence would have established that the defendant did not commit the crimes.

(Def. Memo at 13). Naturally, defendants provide no authority whatsoever for the proposition that the correct standard to evaluate Osborne's constitutional claim is "factual

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR                    *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 3 of 15                                                                         A03-0118 CV

innocence" (as they now define it).[1]  Though Osborne maintains his innocence, he has made it clear that his post-conviction right of access is to "material exculpatory evidence" within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1961).  (*See*, *e.g.*, SJ Memo at 9-15).

In the current context, the "material exculpatory evidence" standard effectively requires Osborne to prove only the materiality of the evidence he wishes to test.  This is because the actual exculpatory value of the evidence must be assumed until DNA testing is conducted.  To require Osborne to prove the results of testing *before* granting testing would obviously be absurd and unfair.  Defendants have not even tried to contest the "materiality" of the requested testing. Of course, the proper standard to evaluate materiality is well-established, and looks precisely to the impact of the disputed evidence on the finder-of-fact and to confidence in the verdict.  *See United States v. Bagley*, 473 U.S. 667, 682 (1985) ("evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome").

On the merits, it cannot be seriously contested that the semen and hair evidence in this case is material.  The State established the material relevance of this precise evidence at trial.  Tellingly, defendants do not dispute that DQ Alpha testing and microscopic hair

---

[1]   Defendants' definitions apparently change over time. They now reject the trial prosecutor's interpretation of Osborne's "actual guilt" as confirmed by the physical evidence against him.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR        *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 4 of 15                                                        A03-0118 CV

comparison were used to prove identity and secure Osborne's guilty conviction. It therefore follows that if this apparently *inculpatory* evidence was DNA tested and found to be *exculpatory*, there is a reasonable probability that a jury would come to a different result. Put another way, one's confidence in the verdict against Osborne would be seriously undermined if DNA testing showed that the hair and semen evidence used to convict him did not support his conviction, but instead implicated someone else.

Both case law and logic support Osborne's contention that his right of access should be to "material exculpatory evidence" as defined by *Brady* and its progeny rather than the "factual innocence" standard proposed by defendants. Certainly, the court in *Godschalk v. Montgomery County District Attorney's Office*, 177 F.Supp.2d 366 (E.D.Pa. 2001), employed a *Brady* analysis in reaching the conclusion that Godschalk had a right to potentially exculpatory semen evidence. *See id*. at 368-70. Similarly, in *Thomas v. Goldsmith*, 979 F.2d 746 (9th Cir. 1992), the Ninth Circuit recognized the state's post-conviction duty to turn over potentially exculpatory semen evidence for the purposes of DNA testing. *See id*. at 749-50 (*citing Brady*). And, most recently, Judge Patel of the Northern District of California concluded that "due process will under certain circumstances require a state to provide a lawfully convicted criminal with access to potentially exculpatory biological evidence." *Moore v. Lockyer*, 2005 WL 2334350 (N.D.Cal Sept. 23, 2005).

Beyond its support by precedent, the choice of *Brady* as the standard to evaluate post-conviction DNA access claims is clearly superior as a practical matter to defendants' proposed "factual innocence" standard. While the materiality of the key evidence can be

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

judged based on the record, this Court could never be in a realistic position to determine whether theoretical future DNA test results do or do not support a claim of "factual innocence." This is because numerous different DNA results scenarios are entirely possible. For example, DNA testing on the hair and semen evidence could potentially provide results that not only exclude Osborne, but also score a database "hit" on a person in State's own database who is the true perpetrator. Such explosive results can and do occur -- and lead to exonerations[2]. Naturally, DNA tests could show something quite different, but nobody can know the truth until the tests are conducted. If the defendants' "factual innocence" approach was the standard, this Court would have speculate about endless testing scenarios and indeed conduct a lengthy trial where evidence supporting and contradicting Osborne's innocence claim was heard and weighed before determining whether DNA testing was appropriate[3]. Luckily, there is no need to undertake such an

---

[2]   Two recent Innocence Project cases involved scenarios where DNA testing scored amazing database "hits" that turned a hotly contested case into a clear exoneration. *See* Bill Torpy and Bill Rankin, *A Crime, Then a Tragedy; Twists in Rape Case Snared Wrong Man*, The Atlanta Journal-Constitution, December 11, 2005, at 1A (Robert Clark spent more than 24 years in prison for rape before DNA tests exonerated him and led to a man originally known to the investigators, and who is suspected of convicting subsequent rapes and serving time for cruelty to children); Alan Johnson, *Cigarette Butt Could Help Clear Prisoner*, The Columbus Dispatch, December 10, 2005 at 01A (Clarence Elkins, serving a life sentence for rape and murder, was excluded when DNA from the scene matched that of a man serving time for three child rapes). In both cases, now exonerations, the DNA was entered into databanks, and returned matching criminals convicted of similar crimes. *See*
http://www.innocenceproject.org/case/display_profile.php?id=167 (Robert Clark); http://www.innocenceproject.org/case/display_profile.php?id=168 (Clarence Elkins).

[3]   Defendants have not cross-moved for summary judgment, or argued that the allegedly disputed matters can be resolved in their favor. Thus, they appear determined to move to trial.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR                          *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 6 of 15                                                                                       A03-0118 CV

arduous venture since the undisputed record shows that Osborne meets the proper "material exculpatory evidence" standard.

This conclusion is not disturbed by the attached parole-board statements of Jackson and Osborne. DNA testing remains material because it could objectively demonstrate whether these statements are correct or incorrect. It would be no surprise if DNA testing indeed proved Osborne's innocence. The experience of DNA exonerations has definitively shown that it is possible for criminal defendants to falsely confess to crimes they did not commit. *See* Saul M. Kassin and Gisli H. Gudjonsson, *True Crimes, False Confessions*, Scientific American Mind, June 2005, at 26 ("Typically 20 to 25 percent of [postconviction] DNA exonerations had false confessions in evidence."); Steven A. Drizin & Richard A. Leo, *The Problem of False Confessions in the Post-DNA World,* 82 N.C. L. Rev. 891, 932-43 (2004). Indeed, the case of Bruce Godschalk provides a perfect example of why DNA testing should not be precluded because of inculpatory statements. (*See* SJ Memo at 12 and note 3). The ability of DNA testing to overcome confessions has also been acknowledged by the Ninth Circuit. *See Baylor v. Estelle*, 94 F.3d 1321, 1324 (9th Cir. 1996) (attorney ineffective for not following up on semen evidence even though defendant confessed).

In sum, defendants have failed to show that genuine issues of material fact exist that prevent summary judgment from being granted. The proper question for this Court is whether the hair and semen evidence is material -- and no extensive hearing on factual innocence is needed to support the conclusion that DNA testing could indeed provide material exculpatory evidence.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT       *Osborne v. District Attorney's Office, et al.*
Page 7 of 15                                          A03-0118 CV

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

### 3. Osborne Has a Post-Conviction Due Process Right of Access

Osborne primarily locates his right to access potentially exculpatory biological evidence in clear precedent and well-established principles of procedural and substantive due process. Rather than deal squarely with his arguments, defendants instead mischaracterize Osborne's limited action as one seeking "an unfettered due process right to access post-conviction DNA testing," (Def. Memo at 14; *see also id*. at 19, 20). Having set up such a straw man, defendants then attack Osborne's cases as not supporting an "unfettered" right. This tactic is to no avail, however, because Osborne actually claims a focused due-process right to test *material and relevant evidence that was used to secure his conviction*. In this case, DNA testing serves only the interests of truth. On the other hand, defendants still have not identified *any* legitimate interest in denying Osborne the right to conduct testing at his own expense.

Defendants initially assert that Osborne has not identified a specific constitutional provision that was violated and made his trial unfair, and suggest that this is fatal to his Section 1983 claim. (Def. Memo at 14, *citing Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999)). The citation to *Fuller* is both mystifying and misleading since that case is specific to an action for relief under federal habeas corpus, not Section 1983. Of course, the Ninth Circuit has already vindicated Osborne's decision to proceed via Section 1983 and the sole question before this Court is whether defendants are violating the Constitution by denying Osborne access to the biological evidence. *See Osborne v. District Attorney's Office for Third Judicial Dist.*, 423 F.3d 1050, 1056 (9th Cir. 2005).

Osborne has pointed out that the decisions in *Godschalk*, *Thomas*, and *Moore* all

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR                    *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 8 of 15                                                                                      A03-0118 CV

support his contention that he has a post-conviction-due-process right to access material exculpatory evidence for DNA testing.  Defendants completely ignore *Godschalk*, and unsuccessfully attempt to distinguish *Thomas* and *Moore*.

According to defendants, Osborne is not in a "conundrum" like the prisoner in *Thomas* because he can litigate the question of access in state courts.  However, this is beside the point since defendants are blocking Osborne's access to evidence in that forum too.  As in *Thomas*, defendants aim to trap Osborne in a Catch-22.  They deny him access to potentially exculpatory DNA evidence because they insist he is guilty -- a claim that could only be disproved by actually allowing Osborne access to DNA testing.  Osborne thus needs the intervention of the federal court to break this viscous cycle.  Although the petitioner in *Thomas* was proceeding via habeas, the Court's commonsense approach to *Brady* applies with equal force to Osborne, who seeks only to prove his innocence by accessing the very evidence that was used to convict him.  The bottom line is that the Ninth Circuit has recognized a post-conviction *Brady* right when it would serve the interest of justice.

The fundamental reality is that Osborne seeks only to test evidence used to convict him, and this reality puts the lie to defendants' assertion that he desires an "unfettered" right of access.  Indeed, his narrowly drawn request is precisely the kind of situation envisioned by the *Moore* court when it concluded that "due process will under certain circumstances require a state to provide a lawfully convicted criminal with access to potentially exculpatory evidence." *Moore*, 2005 WL 2334350 at *8.  Mr. Moore's case did not present the appropriate circumstance to order testing because the state court had

REPLY IN SUPPORT OF MOTION FOR　　　　　　　　　*Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 9 of 15　　　　　　　　　　　　　　　　　　　　　　　　　　　　　A03-0118 CV

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

already ruled on Moore's post-conviction DNA testing request under the appropriate *Bagley* standard. *Id*. at *9. Defendants are thus wrong when they suggest that the Moore court found that plaintiff "could not prevail even at the out limits of such a right in the *pretrial* context." (Def. Memo at 19) (emphasis added). The *Moore* court effectively endorsed the *Brady/Bagley* standard in the post-conviction context, but found Moore's particular claim barred by California issue preclusion law[4]. Since Osborne seeks only to test evidence used to convict him, the *Moore* opinion suggests that he deserves relief.

Defendants offer but a single case against finding a constitutional right of access. (*See* Def. Memo at 17-18, citing *Harvey v. Horan* ("*Harvey I*"), 278 F.3d 370, 374-76, 378-79 *reh'g denied*, 285 F.3d 298 ("*Harvey II*") (4th Cir. 2002)). Of course, *Harvey I* was decided on the *Heck v. Humphrey* grounds specifically rejected by the Ninth Circuit in this case. *See Harvey I*, 278 F.3d at 374. Rehearing was denied in *Harvey II* because the petitioner actually obtained DNA testing! (*See* Pltff's Memo at 10, note 2). Under these circumstances, the case is hardly useful as precedent to deny Osborne testing. And just as Judge Luttig had prescient analysis on the *Heck* issue in his separate opinion in *Harvey II*, his opinion also presents the more learned and compelling view on why a

---

[4] *Res judicata* is obviously not an issue in Mr. Osborne's case since (1) there has been no final ruling from the state court on his DNA claim; and (2) it is not known whether Alaska will apply the proper *Brady/Bagley* standard since the State has no post-conviction DNA testing law enunciating the standard for granting testing.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Page 10 of 15

*Osborne v. District Attorney's Office, et al.*
A03-0118 CV

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

constitutional right of access to "previously-produced forensic evidence"[5] should be recognized. *Harvey II*, 285 F.3d at 310. (Luttig, J.).

For instance, Judge Luttig insightfully answers defendants' notion that granting access in this case "would leave perfectly valid judgments in a perpetually unsettled state" because defendants are always convicted on "less than perfect" science and "science is continually advancing." (Def. Memo at 20). The fact is that STR DNA testing is no ordinary scientific advance; it is a "watershed" technology that has revolutionized law enforcement and criminal justice. *See Harvey II*, 285 F.3d at 305-06, note 1 (Luttig, J.). The Ninth Circuit has also recognized the historic and unique importance of STR testing, and of the CODIS database in particular. *See United States v. Kincade*, 379 F.3d 813, 819-20 (9th Cir. 2004) ("CODIS serves as a potent tool for monitoring criminal activity [and]… has aided some 16,160 investigations nationwide -- 1,710 within the Ninth Circuit" (internal citation omitted)).

In short, STR DNA is different. It can effectively distinguish between any two persons on the planet (except identical twins), and thus a conclusive STR test can definitively prove or disprove identity. Allowing a limited right of access to this technology does not create a dangerous slippery slope -- it merely recognizes that STR testing has changed the rules of the game, and that certain defendants who were convicted before STR on the basis of forensic evidence have a right to access this revolutionary technology. Moreover, defendants' boilerplate appeal to finality has no

---

[5]   Judge Luttig would presumably grant Osborne testing because he seeks access to forensic evidence that was indeed "previously-produced" and used to convict.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Page 11 of 15

*Osborne v. District Attorney's Office, et al.*
A03-0118 CV

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

application in this case.  There can be no finality interest in keeping an *innocent* person in prison, and DNA testing will serve the interests of finality if it confirms guilt.

The weight of authority and logic thus support Osborne's post-conviction *Brady* right to this uniquely relevant evidence that was specifically used to prove guilt.  By refusing to release this evidence, defendants have effectively destroyed potentially exculpatory evidence in violation of the Due Process Clause of the Constitution.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Of course, *Youngblood* requires that evidence be destroyed in bad faith, but bad faith appears simple to prove in this instance.  Not only have defendants blatantly rejected their *own theory* of the relevance of the hair and semen evidence offered at trial, they also have yet to identify *any* interest in preventing Osborne from testing the evidence at his own expense.  As the saying goes, what is good for the goose is good for the gander.  Basic fairness demands that Osborne be permitted to test evidence used to implicate him before the jury.  The denial of access for no reason whatsoever amounts to an arbitrary exercise of government power that violates substantive due process.  (*See* Pltff's Memo at 15, *citing* cases).

**4.   Defendants Have Violated Osborne's Right of Access Derived from His Right of Meaningful Access to the Courts, and his Right to Prove Actual Innocence and Seek Executive Clemency**

In their Response, defendants do not directly dispute that a right to access to potentially exculpatory biological evidence might derive from the right to meaningfully access the courts or to prove actual innocence.  Rather, they maintain that they have not prevented Osborne from accessing the courts (Def. Memo at 25-26), and that Osborne

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR                      *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 12 of 15                                                                                      A03-0118 CV

could not meet the "extraordinarily high" threshold for proving innocence under *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997). (*See* Def. Memo at 23). Both of these objections fail to deal with the ripeness issue raised by Osborne in his summary judgment motion. (*See* SJ Memo at 16-17).

Osborne cannot substantiate his actual innocence claim until DNA testing is conducted. He wishes to ripen his claim and present it to the courts. As explained above, just how exculpatory (if at all) the DNA tests are cannot be known until conducted. If indeed the tests excluded Osborne and resulted in a database "hit" to a convicted Alaskan offender, Osborne would easily meet the actual innocence standard from *Carriger*. But defendants prevent Osborne from taking the critical first step in ripening his claim.

Defendants incorrectly assume that Osborne's right to meaningful access of the courts is limited to the federal courts. (Def. Memo at 25). In fact, if DNA test results supported his innocence claim, he would undoubtedly present his claim to the state courts first. Yet defendants prevent Osborne from taking the first step to *meaningfully* access that forum with an innocence claim by blocking him from paying for DNA testing of evidence used to convict him.

Finally, while Osborne does not argue that he has a constitutional right to executive clemency, he does maintain that, given the existence of clemency procedures, he retains a residual liberty interest in meaningfully accessing these procedures by presenting a claim of innocence. *See generally Harvey II*, 285 F.3d at 314 (Luttig, J.) (*citing* cases).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR             *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 13 of 15                                                        A03-0118 CV

## Conclusion

Osborne has an established federal constitutional right to access "material exculpatory evidence" for the purposes of post-conviction DNA testing. No genuine issue of material fact precludes summary judgment, and relief should be granted.

DATED this 13th day of March, 2006, at Anchorage, Alaska.

                        DORSEY & WHITNEY LLP
                        Co-Counsel for Plaintiff

                        By:   /s/ Robert C. Bundy
                            Robert C. Bundy, ABA #7206021
                            DORSEY & WHITNEY LLP
                            1031 West Fourth Avenue, Suite 600
                            Anchorage, AK 99501-5907
                            (907) 276-4557
                            bundy.robert@dorsey.com

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR         *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 14 of 15                                                                         A03-0118 CV

CERTIFICATE OF SERVICE

This certifies that on the 13th day of March, 2006, a copy of the foregoing document was served on:

| | |
|---|---|
| Randall S. Cavanaugh<br>Kalamarides & Lambert<br>711 H Street, Suite 450<br>Anchorage, AK  99501 | Peter Neufeld and Colin Starger<br>Innocence Project<br>Benjamin N. Cardozo School of Law<br>100 Fifth Avenue, 3rd Floor<br>New York, NY  10011 |
| Nancy Simel, Assistant Attorney General<br>Special Prosecutions and Appeals<br>310 K Street, Suite 308<br>Anchorage, Alaska  99501 | Mary Pinkel<br>Municipality of Anchorage Department of Law<br>P.O. Box 1996650<br>632 W. 6th Avenue, Suite 730<br>Anchorage, Alaska  99519-6650 |

by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class regular mail.

　　　　/s/ Robert C. Bundy
Robert C. Bundy, ABA #7206021
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT   *Osborne v. District Attorney's Office, et al.*
Page 15 of 15   A03-0118 CV
4835-3056-2048\1 3/13/2006 1:33 PM