Nancy R. Simel
Assistant Attorney General
Office of Special Prosecutions
and Appeals
310 K Street, Suite 308
Anchorage, Alaska  99501
Telephone: (907) 269-6250
Facsimile: (907) 269-6270
Email: Nancy_Simel@law.state.ak.us

Attorney for Defendants Anchorage District Attorney's Office and Parkes

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| WILLIAM G. OSBORNE,<br><br>   Petitioner,<br><br> vs.<br><br>DISTRICT ATTORNEY'S OFFICE FOR THE THIRD JUDICIAL DISTRICT, ANCHORAGE, ALASKA; SUSAN A. PARKES, DISTRICT ATTORNEY, in her official capacity; ANCHORAGE POLICE DEPT., ANCHORAGE, ALASKA; WALT MONEGAN, ANCHORAGE POLICE DEPT.,<br><br>   Respondent. | Case No. 3:03-cv-00118-RRB<br><br>MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT |

   Plaintiff William Osborne was convicted by an Alaskan jury of two counts of first-degree sexual assault, one count of kidnapping, and one count of first-degree assault. Osborne filed a civil rights complaint under 42 U.S.C. § 1983. In this action, he seeks an injunction requiring the state

1

defendants to provide him with access to certain items of evidence so that he can subject it to post-conviction DNA testing. More specifically, Osborne seeks access to three items of evidence – sperm from inside of a condom found at the scene on the night after the crimes occurred, a hair found on the outside of this condom, and a hair recovered from a sweater that the victim probably was wearing on the night that the offenses occurred. He intends to subject these items of evidence to short tandem repeat (STR) DNA testing and possibly mitochondrial DNA testing, methods of DNA testing that were developed after his trial.

Osborne filed a motion for summary judgment. The state defendants filed a memorandum in opposition. [Dkt. 90] That motion is currently pending before the court.

The state defendants are entitled to summary judgment in their favor for two of the same reasons that Osborne is not entitled to summary judgment in his favor – (1) there is no federal due process right to post-conviction DNA testing, and (2) even if such a right exists, Osborne is not entitled to avail himself of it because additional DNA testing could not prove that he is actually innocent of the offenses for which he stands convicted. The state defendants rely on and incorporate herein their memorandum in opposition to Osborne's motion for summary judgment.

In addition, the Alaska Superior Court recently made factual

findings in the course of ruling that Osborne is not entitled, as a matter of due process under the Alaska Constitution, to post-conviction DNA testing of the disputed evidence. [Exh. A] These findings are entitled to preclusive effect in federal court and they provide further support for the state defendants' position that Osborne is not entitled as a matter of due process under the United States Constitution to additional post-conviction DNA testing of the evidence.

For the reasons discussed in the state defendants' memorandum in opposition to Osborne's motion for summary judgment, any possible federal due process right to post-conviction DNA testing would at a minimum be contingent upon a convicted offender demonstrating that the test results could prove his factual innocence. The Alaska Superior Court expressly found that Osborne cannot satisfy this condition.

First, the superior court found that Osborne's conviction did not rest primarily on eyewitness identification evidence. [Exh. A at 2-5] The superior court noted that, although the victim had identified Osborne as one of the perpetrators at trial and in a line-up and the prosecutor had argued in closing that the victim's testimony was sufficient to convict, the prosecutor also had argued that even without the victim's testimony the evidence was sufficient to convict. [Exh. A at 2, 5] The superior court found that there was substantial physical evidence placing Osborne's co-defendant Dexter Jackson at the scene of the crime. [*Id.*] In addition, the superior court found that the evidence

introduced at trial showed that Osborne called Jackson twice from the Space Station earlier in the evening, that Osborne was seen entering Jackson's vehicle near the Space Station at approximately 9:30 p.m. (just a few minutes later, they picked up K.G. on Spenard Road), that Osborne was seen later that evening with Jackson and some of the witnesses noticed blood on Osborne's clothing, that the victim's description of her assailants was largely consistent with Osborne's physical characteristics, that a tool handle found in Osborne's room was similar to one found at the scene which the victim described had been used to hit her, and that tickets from the Space Station were found in Jackson's vehicle. [Exh. A at 3]

Second, the superior court found no demonstrable doubt about Osborne's identification as the perpetrator. [Exh. A at 5-6] The superior court acknowledged that there were some minor problems with respect to the victim's identification of Osborne, but found that when her identification of Osborne, which was unequivocal, was considered in conjunction with all the other evidence of his guilt, a demonstrable doubt as to Osborne's guilt had not been established. [Exh. A at 5-6]

Third, the superior court found that additional DNA testing could not conclusively prove that Osborne was innocent. [Exh. A at 6-9] The superior court found that "even if testing results as to the hair on the sweater demonstrated that the hair did not belong to Mr. Osborne, it would not be

4

conclusive, particularly given K.G.'s work as a prostitute." [Exh. A at 7] The superior court found it a closer question with respect to the hair on the condom and the semen, but found that exclusionary test results would not be conclusively exculpatory in light of the fact that the condom was not recovered from the scene until more than 24 hours after the assault and the considerable other evidence of Osborne's guilt, including Osborne's statements to the Alaska Board of Parole admitting his guilt. [Exh. A at 7-9]

The Full Faith and Credit Act, 28 U.S.C. § 1738, accords the judicial proceedings of a state court "the same full faith and credit" in a federal court as they have within the state. Under the act, a federal court must give state court findings the same preclusive effect to which they would be entitled under state law. *See Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, (1984). The Full Faith and Credit Act applies in federal court § 1983 actions. *Id.* at 893, 104 S.Ct. at 76; *Allen v. McCurry*, 449 U.S. 90, 96-105, 101 S.Ct. 411, 416-20, 66 L.Ed.2d 308 (1980). Although *Allen* recognizes an exception for situations where the state does not provide fair procedures, this exception merely restates the basic principle limiting collateral estoppel to cases where the party had a full and fair opportunity to litigate the claim or issue decided by the first court. *Id.* at 101, 101 S.Ct. at 418.

Osborne can make no such claim. None of the remand proceedings were *ex parte*, Osborne was represented by counsel, Osborne was not precluded

from presenting evidence, and Osborne has the opportunity to challenge the superior court's findings on appeal. In addition, the issues on which the superior court issued findings in the state court are identical to the factual issues underlying Osborne's claim in this court. *See, e.g., Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994) (probable-cause determination in state court precluded defendant's claim that arrest warrant was secured based on an affidavit containing false statements and omitting facts tending to show innocence); *Ayres v. City of Richmond*, 895 F.2d 1267, 1270-72 (9th Cir. 1990) (state court ruling in suppression hearing collaterally estopped federal court from relitigating issue in §1983 action where the issue was the same and the criminal defendant had full motivation and opportunity to litigate it in the suppression hearing). Collateral estoppel also applies to determinations made in state habeas or post-conviction relief proceedings. *See Silverton v. Dep't. of Treasury*, 644 F.2d 1341, 1347 (9th Cir.), *cert. denied*, 454 U.S. 895 (1981) (no reason to accord state habeas corpus decisions less preclusive effect than other state court decisions).

The doctrine of collateral estoppel, or issue preclusion, therefore should be applied to the Alaska Superior Court's findings on remand. Collateral estoppel applies to both issues of fact and issues of law that are necessary to a court's decision and precludes relitigation of the same issue in a different cause of action between the same parties. *See* 1A Martin A. Schwartz, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 11.02[A], at 11-6 (4th ed. 2003).

Under Alaska law, there are three conditions for the application of collateral estoppel: (1) the parties must be in privity; (2) the issue to be precluded from relitigation must be identical to the one decided in the first action; and (3) the issue in the first action must have been resolved by a final judgment on the merits. *Holmberg v. State, Div. of Risk Mgt.*, 796 P.2d 823, 827 (Alaska 1990). Those conditions are satisfied here.

The fact that Osborne has a pendent appeal involving the superior court's findings on remand has no effect on whether collateral estoppel applies. In *Wyatt v. Wyatt*, 65 P.3d 825, 831 (Alaska 2003), the Alaska Supreme Court stated that it had repeatedly held that the pendency of an appeal is "irrelevant for the purposes of collateral estoppel." The policy underlying this rule is to prevent the relitigation of issues that already have been decided. *Holmberg*, 796 P.2d at 829. The Alaska Supreme Court recognized the difficulty with the rule "is that a second judgment based on the preclusive effects of the first one should not stand if that judgment is reversed." *Id*. The Alaska Supreme Court proposed two solutions: the lower court could either (1) stay the proceedings during the pendency of the appeal, or (2) give preclusive effect to the issue that already was decided and, if the first decision is reversed on appeal, allow the party to institute a direct action under Civil Rule 60(b) to vacate the judgment that rested on the preclusive effect of the earlier reversed judgment. *Id*. Since this court has declined to stay the proceedings pending the state proceedings, it

7

should give preclusive effect to the findings made by the Alaska Superior Court.

The Alaska Superior Court's findings – that Osborne's convictions did not rest on an eyewitness identification, that there was no demonstrable doubt about the eyewitness identification, and that even if the proposed DNA testing was exclusionary, it would not prove Osborne was innocent – show that Osborne is not entitled to post-conviction DNA testing of the disputed evidence and that his complaint should be summarily denied.

Osborne does not have a constitutional right to DNA testing in this case. This court should summarily deny Osborne's complaint.

DATED May 17, 2006, at Anchorage, Alaska.

>DAVID W. MÁRQUEZ
>ATTORNEY GENERAL
>
>s/ Nancy R. Simel
>   Assistant Attorney General
>   State of Alaska, Dept. of Law
>   Office of Special Prosecutions
>      and Appeals
>   310 K Street, Suite 308
>   Anchorage, Alaska  99501
>   Telephone: (907) 269-6250
>   Facsimile: (907) 269-6270
>   e-mail: Nancy_Simel@law.state.ak.us
>   Alaska Bar No. 8506080

### Certificate of Service

I certify that on May 17, 2006, a copy of the foregoing Memorandum in Support of Cross-Motion for Summary Judgment was served electronically on **Robert C. Bundy, Randall S. Cavanaugh, Mary B. Pinkel, Nancy R. Simel** and on **Peter J. Neufeld, Colin Starger both at Benjamin Cardoza School of Law, 100 5th Avenue, 3rd Floor, New York, NY 10011** by regular U.S. mail.

<u>s/</u> **<u>Nancy R. Simel</u>**