Robert C. Bundy, ABA #7206021
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com

Co-Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF ALASKA

| | |
|---|---|
| WILLIAM G. OSBORNE,<br><br>                          Plaintiff,<br>vs.<br><br>DISTRICT ATTORNEY'S OFFICE FOR THE THIRD JUDICIAL DISTRICT, ANCHORAGE, ALASKA; SUSAN A. PARKES, DISTRICT ATTORNEY, in her official capacity; ANCHORAGE POLICE DEPT., ANCHORAGE, ALASKA; WALT MONEGAN, ANCHORAGE POLICE DEPT.<br><br>                          Defendants. | Case No. A03-0118 CV<br><br><br><br><br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT** |

Plaintiff William Osborne submits this Response to Defendants' Cross-Motion for Summary Judgment filed on May 17, 2006. Defendants ostensibly move on three separate grounds. Defendants first suggest that (1) no federal due-process right to post-conviction DNA testing exists; and (2) even if such a right exists, "DNA testing could not prove that [Osborne] is actually innocent." (Memorandum in Support of Cross-Motion for Summary Judgment ("CSJ Memo") at 2). Although Mr. Osborne specifically rebutted all of Defendants' arguments concerning the federal right to post-conviction DNA testing in his Reply Memorandum in Support of Motion for Summary Judgment ("SJ Reply"), Defendants do not address any of Mr. Osborne's Reply arguments or

indeed offer any new analysis in their current brief. Rather, Defendants hang their hopes on their third ground for summary judgment – that Judge Sharon Gleason's May 8, 2006 "Findings on Remand" in *Osborne v. State*, Case No. 3AN-97-006336 ("Gleason Findings") are entitled to preclusive effect, and collaterally estop Mr. Osborne from contesting the issue that "[DNA] test results could prove his factual innocence." (CSJ Memo at 3). For the reasons explained in detail below, the doctrine of collateral estoppel does not apply in this case, and summary judgment in favor of Plaintiff therefore remains appropriate.

## I.     Mr. Osborne Has a Federal Constitutional Right to Subject Potentially Exculpatory Evidence to Post-Conviction DNA Testing.

Defendants offer no new analysis in support of their view that no federal right of access to evidence for the purpose of post-conviction DNA testing exists. Plaintiff therefore stands by his original Memorandum of Law, his Reply, and the cases cited therein on this question.[1]

Briefly, Mr. Osborne's arguments in favor of finding a right of access are rooted in the clear imperative of the Supreme Court that due process and a concern for the truth mandates a right of access. *See generally*, *Harvey v. Horan,* 285 F.3d 298, 304-10 (4th Cir. 2002) (Luttig, J., concuring). Clearly, Mr. Osborne would have a *pre-trial right* to access this "potentially exculpatory" hair and semen evidence, and barring access to the

---

[1] In the interest of full disclosure, on May 14, 2006, the Sixth Circuit issued an unpublished order in the capital case *Alley v. Key*, in which the court stated, "there exists no general constitutional right to post-judgment DNA testing." *Alley v. Key,* No. 06-552, 2006 WL 1313364 at *2 (6th Cir. May 14, 2006), App. at A186. The order was not designated for publication and the Sixth Circuit specifically noted that, "this case and its expedited briefing schedule do not encourage a definitive ruling on all aspects of this matter." *Id.* Sixth Circuit Rule 28(g) states that citation of the court's unpublished opinions for precedential value is disfavored.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                    *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 2 of 13                                                                           A03-0118 CV

same evidence at this time amounts to its bad-faith destruction. *See Arizona v. Youngblood*, 488 U.S. 51, 55-58 (1988). The Ninth Circuit has already held that the State has a post-conviction *Brady* obligation to produce DNA evidence in the habeas context, *Thomas v. Goldsmith*, 979 F.2d 746, 749-50 (9th Cir. 1992), and Mr. Osborne must benefit from this precedent since the *Brady* obligation attaches to the State and does not depend on the vehicle chosen by a petitioner to vindicate his rights. Principles of substantive due process must limit on the State's ability to suppress potentially exculpatory evidence in the post-conviction context[2] when there is no conceivable prejudice to allowing testing at Plaintiff's expense. In sum, precedent and logic clearly support finding a right of access.[3]

---

[2] One might conceive of the substantive-due-process boundaries of suppression this way. What if a state agent had in his or her possession a perfectly clear videotape of the crime itself and refused to turn it over? Even post-conviction, due process would require at a minimum putting the videotape into a VCR to allow a defendant claiming innocence the opportunity to prove or disprove his claim. No one could reasonably claim that such a videotape could be suppressed. By the same logic, the evidence here cannot be withheld without offending the Constitution. Analytically, the two situations are identical.

[3] It bears mention that numerous state courts have cited a *Brady*-like right as justification for ordering post-conviction DNA testing. *See Pennsylvania v. Brison*, 618 A.2d 420, 425 (Pa. Super. Ct. 1992) (holding on appeal that "principles of justice" necessitated a remand to allow DNA tests to be conducted); *Jenner v. Dooley*, 590 N.W.2d 463, 471 (S.D. 1999) (acknowledging that a post-conviction right to DNA testing exists); *Dabbs v. Vergari*, 570 N.Y.S.2d 765, 768 (N.Y. Super. Ct. 1990) (recognizing right to post-conviction DNA testing was warranted because due process "is not a technical conception with a fixed content unrelated to time, place and circumstances. It is flexible and calls for such procedural protections as the particular situation demands."); *New Jersey v. Thomas*, 586 A.2d 250, 251-52, 254 (N.J. Super. Ct. App. Div. 1991) ("[W]e will not elevate form so highly over substance that fundamental justice is sacrificed.") (citations omitted); *Sewell v. Indiana*, 592 N.E.2d 705, 707-08 (Ind. Ct. App. 1992) (ordering testing observing that the purpose of *Brady* was to prevent miscarriages of justice). Of course, the Alaska courts in this case have ignored this trend and suggested that no federal right of access exists. *Osborne v. State*, 110 P.3d 986, 995 (Alaska App. 2005).

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 3 of 13

*Osborne v. District Attorney's Office, et al.*
A03-0118 CV

**II.    If DNA Tests Exclude Mr. Osborne As the Source of the Semen and Hair Evidence Used to Link Him to the Crime Scene at Trial, It Would Undermine Confidence In the Verdict Against Him.**

Defendants persist in asserting that DNA testing in this case could not prove Mr. Osborne's actual innocence. While Plaintiff strongly disputes this assertion, it is more critical that Defendants have entirely failed to respond to Mr. Osborne's argument that the standard relevant to Mr. Osborne's claim is not "factual innocence" or "actual innocence," but rather is the *Brady/Bagley* standard of "materiality" understood in terms of reasonable probability of a different result and confidence in the verdict. (*See* SJ Reply at 3-5). For the reasons explored in his Reply, it is clear that the *Brady/Bagley* standard is the appropriate one to guide this Court in deciding whether or not a defendant should have access to potentially exculpatory evidence being suppressed by the State.

On the merits, it cannot be disputed that there is a reasonable probability that Mr. Osborne's verdict would have been different had the only forensic evidence used to link him to the crime scene at trial – the semen and hair evidence at issue – turned out to be *exculpatory* rather than *inculpatory*. As previously argued, the State itself has established the relevance of this hair and semen evidence, and their attempts to deny its significance now ring hollow. (SJ Reply at 4-5). In any event, there can be no doubt that the jury's verdict was greatly influenced by this seemingly powerful and objective forensic hair and semen evidence. Exculpatory DNA test results would therefore directly undermine confidence in the deliberations that resulted in the jury's verdict. In other words, DNA testing is necessary to confirm whether the jury proceeded on correct assumptions (that hair and semen evidence linked Mr. Osborne to the crime scene) or incorrect assumptions (that the same evidence actually linked someone else to the crime scene). Of course, it

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                                *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 4 of 13                                                                                          A03-0118 CV

cannot be known ahead of time what the DNA tests will show, but because their potential to undermine confidence in the verdict is real and undeniable, Mr. Osborne should have a right of access.

Although not necessary to prove in order to secure access to the evidence, it is worth noting that DNA testing could indeed demonstrate Mr. Osborne's "actual innocence" to a moral certainty. This is because of DNA's unparalleled power to identify specific individuals through DNA databases. Time and time again, DNA testing shows that seemingly overwhelming cases are negated in an instant because of a database "hit." For example, less than a month ago, Innocence Project client Douglas Warney left a Rochester, New York courtroom a free man after a DNA hit implicated another person. *See* Jim Dwyer, *Inmate Freed as DNA Tests Upend Murder Confession*, New York Times, May 16, 2006 at B1. As in this case, prosecutors resisted testing for years citing an overwhelming case of guilt (Mr. Warney had confessed to the crime and was said to possess knowledge of the crime only the perpetrator could know). Yet, after prosecutors relented and conducted testing, it was revealed that the biological evidence pointed to another perpetrator who had subsequently been incarcerated for another crime. Suddenly, DNA turned an apparently overwhelming case of guilt into an exoneration.

Of course, Mr. Osborne has raised the possibility of a database match before, (*see* SJ Reply at 6, n. 2), but Defendants refuse to deal with this reality. *See also* Maurice Possley and Steve Mills, *Crimes Go Unsolved as DNA Tool Ignored*, Chicago Tribune, Oct. 26, 2003 at 1 (analysis of 115 DNA exonerations revealed that, of 71 profiles entered into DNA databanks, 41 cold hits identified a new suspect in the crime). To be clear, exculpatory DNA results and a database match could point to a specific individual

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                              *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 5 of 13                                                                                      A03-0118 CV

as Dexter Jackson's true partner in crime in this case, and therefore definitively prove that Mr. Osborne was misidentified and is innocent. For this independent reason, a right of access should be recognized.

**III.    The Doctrine of Collateral Estoppel Has No Application in this Case Because the Issue Before this Court – Whether Mr. Osborne Has a Federal Right of Post-Conviction Access to Biological Evidence – Was Not Decided by the State Court.**

In denying Defendants' previous Motion to Stay, this Court recognized that "the *only issue* before the Court in this matter is whether Plaintiff William G. Osborne was deprived of a federally protected right." *Order Denying Motion to Stay Proceedings* dated April 25, 2006, Docket 103 (emphasis supplied). Now Defendants move for summary judgment on an issue-preclusion theory, but never actually define what they believe is the precise issue before this Court that Judge Gleason has ruled on. Of course, the party asserting estoppel "bears the burden of pleading and proving identity of the issues" and to meet this burden, the party must "pinpoint the exact issues." *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) (citing *Huang Tang v. Aetna Life Insurance Co.*, 523 F.2d 811, 813 (9th Cir. 1975) and *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir. 1979)). Defendants' failure to pinpoint the exact issues in common between the two litigations means that they have not met their burden, and that dismissal of their Cross-Motion for Summary Judgment is warranted.

However, even if properly pled, Defendants' collateral estoppel argument would have no merit. It appears that Defendants generally argue that preclusive effect should be given to the findings that: (1) "Osborne's conviction did not rest primarily on eyewitness identification"; (2) there is "no demonstrable doubt about Osborne's identification as the perpetrator"; and (3) "additional DNA testing could not conclusively prove that Osborne

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                                                  *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 6 of 13                                                                                                             A03-0118 CV

[is] innocent." (CSJ Memo at 3-4) (citing Gleason Findings). Unfortunately for Defendants, none of these three issues are before this Court and therefore the doctrine of collateral estoppel has no application. Moreover, even if these issues were before this Court, equity would demand that Judge Gleason's findings not be given preclusive effect given the specific circumstances and exceptional factors in this case.

### A.     No Identity of Issues.

It is well established that federal courts must give the same preclusive effect to state court judgments as state courts would give to their own judgments. 28 U.S.C. § 1738; *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985) (interpreting 28 U.S.C. § 1738). Under Alaska law, there are three elements required for the doctrine issue preclusion (collateral estoppel) to apply: (1) the plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action; (2) the issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action; and (3) the issue in the first action must have been resolved by a final judgment on the merits. *Campion v. State, Dep't of Community & Regional Affairs*, 876 P.2d 1096, 1098 (Alaska 1994) (citing *Murray v. Feigh*t, 741 P.2d 1148, 1153 (Alaska 1987). Here, the lack of identity of the issues defeats application of the doctrine.

Initially, it is abundantly clear that the *legal* issue before this Court was not decided by Judge Gleason. The Superior Court did not deal with Mr. Osborne's federal

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

rights, focusing exclusively on Mr. Osborne's rights under the Alaska Constitution.[4] (Gleason Findings at 1). While Defendants appear to suggest that the factual issues decided by Judge Gleason are somehow dispositive of the legal issues facing this Court, this puts the cart before the horse. When the fundamental legal issue – whether or not a post-conviction right of access exists at all, as well for Mr. Osborne in particular – has yet to be finally decided by any court of binding authority, it is logically impossible for fact-based issue preclusion to apply. This Court needs to reach first the threshold issue of whether or not a right exists, and what the contours of this right are, before it can begin to address whether previous decisions affect Mr. Osborne's particular right of access. In sum, this Court must reach the legal issue left open by the Ninth Circuit regardless of Judge Gleason's findings.

As demonstrated, the legal issue turns on the *Brady/Bagley* standard of materiality, which is entirely distinct from any of the factual issues decided by Judge Gleason. The lack of identity of factual issues before this Court and the state court also independently bars the application of collateral estoppel. Since Mr. Osborne's right of access derives from *Brady* and its progeny, the *factual* issue before this Court is whether the evidence Mr. Osborne seeks is "material." In other words, was the hair and semen evidence

---

[4] Of course, the Alaska Court of Appeals did suggest that Osborne has no federal constitutional right of access, *Osborne v. State*, 110 P.3d at 995, but Defendants do not claim that this decision is entitled to preclusive effect. Indeed, collateral estoppel is not applicable because the Court of Appeals' observation about federal rights was clearly dicta – it played no role in the Court's holding, which remanded the case back down to Judge Gleason to decide the state constitutional issues. Even if the Court's pronouncement was not dicta, it was not a final judgment on the merits since the case was remanded down and the federal issue could not be appealed. In any event, Defendants have waived any preclusion defense on this ground, and the Ninth Circuit itself specifically left the constitutional question to this Court to decide despite the Alaskan court's ruling (which had already issued).

RESPONSE TO CROSS-MOTION FOR         *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 8 of 13                                                         A03-0118 CV

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

materially relevant to Mr. Osborne's conviction? If so, access for the purpose of DNA testing is appropriate. The factual issue could be also be framed as whether there exists a reasonable probability that Mr. Osborne's verdict would have been different if DNA test results showed the questioned evidence to be exculpatory rather than inculpatory. Under either formulation, it is undeniable that these precise factual issues were not addressed by Judge Gleason.

It is simply not relevant to this proceeding whether Mr. Osborne's conviction rested primarily on eyewitness identification, whether there was demonstrable doubt about Mr. Osborne's identification as the perpetrator, or even whether additional DNA testing could conclusively prove actual innocence. Judge Gleason's findings did not address whether or not confidence in the verdict against Mr. Osborne would be undermined if the hair and semen evidence used to convict him was shown to be exculpatory through DNA testing. Once again, Defendants' false assumption that the question before this Court is "factual innocence" dooms their arguments. Without identity of the factual or legal issues, collateral estoppel simply cannot apply. *See*, *e.g.*, *Andrews v. Wade & DeYoung, Inc.*, 875 P.2d 89, 93 (Alaska 1994) (no preclusion "because the two proceedings implicate different legal and factual issues.").

### B.     Equity Bars Application of Issue Preclusion in this Case.

As the Supreme Court has recognized, "[e]quity eschews mechanical rules; it depends on flexibility." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). Thus, "special circumstances [may] warrant an exception to the normal rules of preclusion." *Montana v. United States*, 440 U.S. 147, 155 (1979). The Alaska courts recognize that collateral estoppel has no place in preventing justice from being served as it is an

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                     *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 9 of 13                                                                          A03-0118 CV

equitable concept, and may not apply if "unusual or exceptional factors" were present in the prior adjudication. *See Murray v. Feigh*t, 741 P.2d at 1153. Collateral estoppel "should not come at the cost of obtaining substantial justice in individual cases or stunting the evolution of legal doctrine." *State v. United Cook Inlet Drift Assoc.*, 895 P.2d 947, 954 (Alaska 1995). Here, even if this Court found identity of the factual issues between this litigation and Judge Gleason's findings, it should still not apply collateral estoppel because to do so would defeat the ends of justice.

DNA testing in this case can only serve the ends of truth, and the State has no legitimate interest in opposing this truth-seeking activity. *See United States v. Agurs*, 427 U.S. 97, 108 (1976) (prosecutor must always be faithful to overriding interest that justice shall be done). Mr. Osborne has offered to pay for any and all testing, so there is no financial impact on the State. If DNA testing is allowed, and the results inculpate Mr. Osborne, all litigation ceases and the true ends of finality are served. On the other hand, if test results exclude Mr. Osborne, the State's ability to contest the precise meaning of those results in any subsequent litigation remains intact. Thus, there is simply no prejudice to allowing testing and seeing exactly what the results show. Collateral estoppel should not work to preclude the pursuit of objective scientific truth.

In addition, it should be noted that Judge Gleason's opinion reveals some glaring lapses in logic that present an exceptional factor militating against the application of collateral estoppel. Specifically, Judge Gleason held that Mr. Osborne's conviction did not rest primarily on eyewitness identification, but cited precisely to *eyewitness testimony* as proof of this proposition. (*See* Gleason Findings at 3) (citing eyewitness testimony

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 10 of 13                                                              A03-0118 CV

placing Mr. Osborne with Mr. Jackson). Such bizarre and circular reasoning should not be applied to deny Mr. Osborne's federal right of access.

Finally, the striking parallels between the procedural posture of this case and that of Bruce Godschalk when he turned to the federal courts reveal another equitable circumstance weighing against estoppel. When Mr. Godschalk came to the federal courts, he had already lost a DNA motion in the Pennsylvania courts. *See Godschalk v. Montgomery County District Attorney's Office*, 177 F.Supp.2d 366, 367 (E.D. Pa. 2001) (*citing Commonwealth v. Godschalk*, 451 Pa. Super. 425, 679 A.2d 1295 (1996)). The state courts had found that Mr. Godschalk's case did not primarily rest on eyewitness identification, and therefore that DNA testing could not overcome the overwhelming evidence of his guilt, which included a detailed confession. *Id*. However, the federal court held that

> [I]f by some chance no matter how remote, DNA testing on the biological evidence excludes plaintiff as the source of the genetic material from the victims, a jury would have to weigh this result against plaintiff's uncoerced detailed confessions to the rapes. While plaintiff's detailed confessions to the rapes are powerful inculpatory evidence, so to any DNA testing that would exclude plaintiff as the source of the genetic material taken from the victims would be powerful exculpatory evidence. Such contradictive results could well raise reasonable doubts in the minds of jurors as to plaintiff's guilt. Given the well-known powerful exculpatory effect of DNA testing, confidence in the jury's finding of plaintiff's guilt at his past trial, where such evidence was not considered, would be undermined.

*Id*. at 370 (footnote omitted). Subsequently, testing was ordered and unequivocally excluded Mr. Godschalk – confirming that another assailant committed both rapes – and he was exonerated after fifteen years of wrongful imprisonment. Sara Rimer, *DNA Testing in Rape Cases Frees Prisoner After 15 Years*, New York Times, February 15, 2002, at A12.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR                    *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 11 of 13                                                                    A03-0118 CV

Had the federal court given preclusive effect to the state court ruling on the power of DNA to prove innocence, Mr. Godschalk would be wrongfully languishing in prison today. Fortunately, the court understood that the question was not about whether the case rested on eyewitness identification, but rather whether DNA testing could produce material exculpatory results undermining the verdict. This Court is now faced with a similarly uncompelling state-court decision, and real world experience demonstrates that this decision should not be given preclusive effect.

## CONCLUSION

The number of post-conviction exonerations in the United States now stands at 180 and has continued to grow during this litigation. The real-world importance of recognizing a federal post-conviction right to access evidence for the purpose of DNA testing is thus undeniable. Mr. Osborne has shown that law and logic support his motion summary judgment on this question. Defendants' attempt to cross-move for summary judgment based on an improperly pled collateral estoppel defense falls well wide of the mark. There is simply no identity of the issues between this litigation and the findings in state court. Moreover, equitable considerations weigh entirely in favor of ordering DNA testing, which can only further the interests of truth and cannot prejudice the state in any way. For the reasons stated, Defendants' Cross Motion for Summary Judgment should be denied.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT  *Osborne v. District Attorney's Office, et al.*
Page 12 of 13   A03-0118 CV

DATED this 5th day of June, 2006, at Anchorage, Alaska.

                    DORSEY & WHITNEY LLP
                    Co-Counsel for Plaintiff


                    By: _____/s/ Robert C. Bundy_____
                        Robert C. Bundy, ABA #7206021
                        DORSEY & WHITNEY LLP
                        1031 West Fourth Avenue, Suite 600
                        Anchorage, AK 99501-5907
                        (907) 276-4557
                        bundy.robert@dorsey.com

<u>CERTIFICATE OF SERVICE</u>

This certifies that on the 5th day of June, 2006, a copy of the foregoing document was on:

| | |
|---|---|
| Randall S. Cavanaugh | Peter Neufeld and Colin Starger |
| Kalamarides & Lambert | Innocence Project |
| 711 H Street, Suite 450 | Benjamin N. Cardozo School of Law |
| Anchorage, AK 99501 | 100 Fifth Avenue, 3rd Floor |
| | New York, NY 10011 |
| | |
| Nancy Simel, Assistant Attorney General | Mary Pinkel |
| Special Prosecutions and Appeals | Municipality of Anchorage Department of Law |
| 310 K Street, Suite 308 | P.O. Box 1996650 |
| Anchorage, Alaska 99501 | 632 W. 6th Avenue, Suite 730 |
| | Anchorage, Alaska 99519-6650 |

by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class regular mail.

     /s/ Robert C. Bundy
Robert C. Bundy, ABA #7206021
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

RESPONSE TO CROSS-MOTION FOR          *Osborne v. District Attorney's Office, et al.*
SUMMARY JUDGMENT
Page 13 of 13          A03-0118 CV